UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARYOUSH MONAZZAMI,

                Petitioner,

     v.

TODD BLANCHE, *et al.*,

                Respondents.

CASE NO. 2:26-cv-01155-GJL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Daryoush Monazzami ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On April 6, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody.[1] Dkt. 1. The Petition has been fully briefed. Dkts. 1, 10, 13.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition (Dkt. 1) and **ORDERS** Petitioner's **immediate release** as set forth in the conclusion below.

---

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. *See* Dkt. 6.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 1

## I.      BACKGROUND

Petitioner is a native and citizen of Iran who entered the United States without authorization. Dkt. 1 at 3; Dkt. 11 ¶¶ 3–4. On August 23, 2023, immigration authorities encountered Petitioner near Eagle Pass, Texas, and placed him in custody. Dkt. 11 ¶ 4. In custody, Petitioner was processed for expedited removal pursuant to Section 235(b) of the Immigration and Nationality Act ("INA"). *Id.*

On September 1, 2023, Petitioner indicated a fear of return to Iran,[2] which was referred to United States Citizenship and Immigration Services ("USCIS") for a credible fear review. *Id.* ¶ 5. On September 30, 2023, a Notice to Appear ("NTA"), Form I-862, was issued charging Petitioner with a violation of INA § 212(a)(6)(A)(i) and INA § 212(a)(7)(A)(i)(I). *Id.* ¶ 6.

Petitioner appeared for his scheduled merits hearing on January 29, 2024. *Id.* ¶ 7. The Immigration Judge ("IJ") denied relief and ordered Petitioner removed. *Id.* Petitioner reserved appeal and submitted a timely appeal to the Board of Immigration Appeals ("BIA") on February 2, 2024. *Id.* ¶ 8. On June 7, 2024, the BIA dismissed Petitioner's appeal, affirming the Immigration Judge's decision and rendering the order of removal final. *Id.* ¶ 8.

On September 18, 2024, while in ICE custody, Petitioner appeared for a scheduled interview to assist in obtaining a travel document. *Id.* ¶ 10. On October 22, 2024, Petitioner was released on an Order of Supervision ("OSUP") during the pendency of the travel document processing. *Id.* ¶ 11. The OSUP contained several conditions of release, including reporting requirements, travel restrictions, and the requirement to assist in obtaining necessary travel documents. *Id.*

---

[2] In the Petition, counsel asserts that Petitioner is a Sunni Moslem of Kurdish ethnicity, a religious group and ethnicity that have been persecuted in Iran under its Shiite government. Dkt. 1 at 5.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 2

On August 27, 2025, Canadian authorities intercepted Petitioner attempting to enter Canada at the Pacific Highway Port of Entry in Blaine, Washington. *Id*. ¶ 12; Dkt. 12-2 at 3, Ex. 2. Petitioner requested asylum in Canada and was returned to the United States under the Safe Third Country Agreement. Dkt. 11 ¶ 12. On that same day, Petitioner was transferred to NWIPC, where he remains detained. *Id*. Petitioner has now been detained for nearly nine months since his re-detention on August 27, 2025. *Id*.; Dkt. 1 at 21.

According to Respondents, ICE's Enforcement and Removal Operations ("ERO") has been taking steps to effectuate Petitioner's removal to Iran. Dkt. 11 ¶¶ 13–16. On November 24, 2025, ERO received a response from the Embassy for Iran indicating it would need documentation confirming Petitioner's citizenship before issuing a travel document. *Id*. ¶ 13. In a Declaration filed with his Traverse, Petitioner confirms that he does not possess any documentation of Iranian citizenship, including a passport. Dkt. 13-1 ¶ 3, Ex. 1. On December 17, 2025, a travel document request package was sent to ERO's Removal and International Operations ("RIO") for Petitioner for submission to Iran. Dkt. 11 ¶ 14. Another was sent in April 2026. *Id*. ¶ 15. On April 16, 2026, Petitioner was served with a notice of Post Order Custody Review and Form I-229(a). *Id*. ¶ 16. Petitioner did not sign the notice.[3] *Id*. ¶ 16; Dkt. 13 at 3, n.1.

Petitioner filed his habeas Petition on April 6, 2026. Dkt. 1. He argues that his continued detention, without a reasonably foreseeable end, is unconstitutional under *Zadvydas v. Davis*,

---

[3] Respondents assert that Petitioner refused to sign the notice. *See* Dkt. 10 at 6. In his Traverse, Petitioner counters Respondents' claim, stating,

> In fact, [Petitioner] merely told the ICE officer that he wished to consult with his attorney before signing it. [Dkt. 13-1,] Ex. 1, ¶ 2. ICE never came back to him to see if, after such consultation, he would sign. *Id*. [Petitioner] recently sent a message to the ICE officers via his tablet stating he would sign the document. *Id*.

Dkt. 13 at 3, n.1.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 3

533 U.S. 678 (2001). He asks the Court to order Respondents to promptly release him and refrain from re-detaining him, as well as other prospective injunctive relief.[4] Dkt. 1 at 27–28.

## II.     HABEAS STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III.     DISCUSSION

In this action, Petitioner challenges the constitutionality of his detention pursuant to 8 U.S.C. § 1231, which takes effect once a final order of removal has been entered by an IJ. The first ninety-day period following the entry of a final removal order is known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). To ensure a noncitizen's presence for removal and to protect the community from dangerous noncitizens who are awaiting removal, the INA mandates detention during the removal period. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the

---

[4] Specifically, in addition to his immediate release, Petitioner seeks the following forms of prospective relief: (1) an injunction enjoining Respondents from re-detaining Petitioner without first holding a hearing before a neutral decisionmaker at which the Government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released; (2) an injunction enjoining Respondents from re-detaining Petitioner without obtaining a valid travel document to Iran, providing the valid travel document to him and his counsel, and offering him the opportunity to leave on his own within two months; (3) an injunction enjoining Respondents from removing or seeking to remove Petitioner to a third country without notice and meaningful opportunity to respond; and (4) an injunction enjoining Respondents from removing Petitioner to any third country where he is likely to face imprisonment or other punishment upon arrival. Dkt. 1 at 27–28.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 4

[DHS Secretary] **shall** detain the [noncitizen].") (emphasis added). Once a ninety-day removal period has expired, as occurred in this case, detention of unremoved noncitizens is no longer mandatory; instead, continued detention is committed to the discretion of the DHS Secretary. 8 U.S.C. § 1231(a)(6).

There is no textual limit on the DHS Secretary's discretion to detain certain noncitizens beyond the initial ninety-day removal period. However, in *Zadvydas*, the Supreme Court interpreted the INA to authorize the detention of noncitizens subject to removal orders only for a period "reasonably necessary to secure [their] removal." 533 U.S. at 699. By interpreting the INA in this way, the Supreme Court avoided a "serious constitutional threat" posed by granting the discretionary authority to order noncitizens detained for indefinite durations. *Id*.

Under *Zadvydas*, an order of detention during the first six months after entry of a final removal order is presumptively reasonable. *Id.* at 701. After the presumptively reasonable 180-day window has elapsed, courts apply a burden-shifting framework to determine whether a noncitizen's detention is of an indefinite duration in violation of the INA and due process. *Id*.

Within this framework, the noncitizen carries the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The "good reason to believe" standard "does not place a burden upon the detainee to demonstrate [there is] no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (cleaned up). If the noncitizen provides good reason, the burden then shifts to the government to show removal remains likely within a reasonable timeframe. *Id*. If the government fails to submit sufficient rebuttal evidence showing that removal is likely to

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 5

occur within the reasonably foreseeable future, then the noncitizen is entitled to habeas corpus relief. *Id.*

Here, Petitioner received a final order of removal on June 7, 2024. Although he was released on an OSUP in October 2024, he was re-detained on August 27, 2025, and has remained in detention at NWIPC since that date. The parties do not contest that Petitioner's detention has extended beyond the presumptively reasonable six-month period. Dkt. 1 at 21; Dkt. 10 at 8.[5]

Petitioner has shown that "there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, as Petitioner cannot be removed to Iran at this time because he does not possess travel documents for Iran. Nor does he hold a travel document for any other country. The burden thus shifts to Respondents.

The Court concludes that Respondents have not met their burden of rebutting Petitioner's showing under *Zadvydas*. In their Response, Respondents state that ICE had discussions with the Iranian Embassy regarding travel documents for Petitioner beginning in late 2025, and sent a travel document request package to RIO for submission to Iran in April 2026. Dkt. 11 ¶¶ 13–16. But these statements alone do not automatically render Petitioner's removal "reasonably foreseeable." *See Zadvydas*, 533 U.S. at 701. In fact, Respondents admit they have no detailed plan for removal at this time. Dkt. 10 at 8 ("Federal Respondents acknowledge the current political conflict and that no definitive date or removal are available at this time.").

The Court is thus persuaded that there is no significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Accordingly, Petitioner has shown, by a

---

[5] While Respondents do not expressly acknowledge that the presumptively reasonable six-month removal period has lapsed, they simply proceed with their argument that Petitioner has not carried his burden under *Zadvydas* to show his removal is not significantly likely in the reasonably foreseeable future, claiming "[m]ere duration does not suffice to meet Petitioner's burden." Dkt. 10 at 7–8.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 6

preponderance of the evidence, that he is "in custody in violation of the Constitution or laws or treaties of the United States" and is therefore entitled to habeas relief. *See* 28 U.S.C. § 2241(c).[6]

### IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS** the Petition for writ of habeas corpus (Dkt. 1) and **ORDERS** as follows:

(1)    Respondents **SHALL** immediately release Petitioner Daryoush Monazzami from custody on reasonable conditions of supervision;

(2)    Respondents **SHALL** file a declaration with the Court within **twenty-four hours** of this Order, confirming that Petitioner has been released from immigration detention and providing the date and time of his release;

(3)    Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them **SHALL NOT** re-detain Petitioner unless an Immigration Court hearing is held (on adequate notice) to determine whether detention is appropriate; and

(4)    Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them **SHALL NOT** remove Petitioner to a third country unless and until he is provided with adequate notice and a meaningful opportunity to respond, in accordance with all applicable laws.

Dated this 22nd day of May, 2026.

Grady J. Leupold
United States Magistrate Judge

---

[6] Because the Court has determined Petitioner is entitled to habeas relief on the first claim alleged in the Petition, it need not reach the parties' arguments on the other claims alleged in the Petition.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 7